We will proceed to the next case which is Heather Olson versus Jason Whitfield in his official capacity Good morning. Good morning. My name is Jason Vale and I'm here on behalf of Deputy Whitfield. The case arises from a loud, angry, what is termed by one of the participants, family brawl in which there had been an allegation that at least one blow had been struck and in which there was the possibility of further violence. It was a domestic relations call that the officers arrived at and their first objective, primary objective was to de-escalate the situation, calm everybody down, investigate the allegation of domestic abuse and proceed from there. Their ability to de-escalate the situation and investigate the allegation of abuse was frustrated by the plaintiff's behavior. Several things happened during the incident and we advanced three separate legal theories to the district court why the defendant had probable cause to detain Ms. Olson. The first one which I will address and that's the only ground addressed by the district court was that after Ms. Olson was ordered to, along with everyone else, to leave the house and go out in the yard, she turned away and headed back toward a bedroom to get some clothing. She testified that one of the officers, not Whitfield, intercepted her on the way back to the bedroom and gave her permission to get a shirt. However, there's no evidence in the record that Officer Whitfield knew that she'd been given permission to do that. In fact, when asked point blank by the plaintiff's lawyer about this, he said he was unaware that she'd been given that permission or that she'd asked to go back to get a shirt. So one of the things that she has done, as far as he knew, was to disobey the order to leave the house. Well, you know, that seems to be important in this case and I understand what your client says, but we have to, at this stage, accept the facts as Ms. Olson gives them. And she says in her, I think both, well, in her declaration that at no time did I refuse an order from an officer. Well, she does say that. And I think that we have to accept that. Of course you have to. Yes, you have to accept that. But the district court found that to be very conclusory and basically found it unreliable because it didn't address the specific facts of the incident. Well, tell me what the facts of Deputy Whitfield. So one officer, she says she's not totally clothed. Understandably, she might want to put something on. So she goes back. And you say he didn't know that she had been given permission. But did he arrest her immediately when she came back out of the bedroom door? No. The actual detention didn't take place until they were outside. So that particular instance of disobedience could not have been the reason he arrested her then, whether he heard the direction or not. Well, it forms part of the reasons why he decided to detain her. In fact, in Officer Whitfield's mind, the more important problem was that she kept hollering and screaming, both at the deputies and at other people in the household, throwing epithets and profanity around. But you've got a dispute of fact on that, too, I think. Naomi Fritz's deposition, she said before the police grabbed her, she, meaning Ms. Olsen, was not yelling or causing a disturbance. Instead, she came out of her room like a civilized human being and asked why they were in the house. I don't think there's any dispute that she used foul language. But, again, I understand you have your version of the facts. But there is. I mean, we have to accept the facts as Ms. Olsen presents them. And there seems to be a dispute about that. So why isn't that a jury issue? Ms. Fritz's testimony is at odds with the plaintiff's own testimony. She admitted to yelling the F word at the deputies, get the F out of my house, without even asking why they were there in the first place. She admitted to directing profanity in a loud voice to other people. She used the B word against another woman living there. So it's the words that she spoke that were the basis for her. Well, the plaintiff herself has admitted that she was being loud and shouted at other people. But I'm trying to understand your reasoning. So the words she spoke were the basis for her arrest? No. Well, in part, in part. There's three theories going back to the bedroom theory, which she didn't do promptly as far as Woodfield knew. Secondly, there's the yelling and not calming down, which interfered with, prevented, in fact, the ability of the office to de-escalate the situation and prevent the possibility of future harm. And then there's the disorderly conduct theory where she was saying things to other people in the household, like the B word, that a reasonable officer could conclude under these circumstances where she's a participant in this so-called family brawl, that she was using fighting words, which under Florida's disorderly conduct statute can constitute a violation. Well, I'm just trying to understand what really prompted the officer to arrest her so I can understand totally whether you're saying B words or other words with initials to them. And you can be so loud and disruptive in this volatile situation, an officer can ask you to fight disorderly, whatever the content of the speech. But my understanding from what Judge Hinkle was doing, he was focused on the fact that he, that the office, the deputy arrested her perhaps in part because he thought she was the person who committed the battery on one of the complainants and, in fact, she wasn't and the officer didn't do enough to ascertain that fact. Do you, are you saying that maybe you spot the judge on that one and that's a good ground but that you have other grounds that would sustain the arrest? Well, Deputy Whitfield's thought processes were, first of all, he was under the mistake of But I'm just asking, what is your response to Judge Hinkle's discussion about the lack of probable cause to arrest her based on the bruising of one of the complainants? Do you disagree with his analysis on that? Well, Deputy Whitfield was wrong about the fact that she was the mother. He was mistaken about that. But that was something But the youth argued that he had arguable probable cause to believe he should arrest her. I would have done so. I don't think my co-counsel who drafted the brief had really addressed that permission. But I would have argued that there was arguable probable cause on that given the circumstances in which there was this loud, angry argument going on, everybody's shouting and yelling. Whitfield and the other officers were all mistaken that Ms. Holson was the victim's mother. And that was one of the things that prompted him to detain her so that he could calm the situation. The main issue was calming everybody down. I'm just trying to figure out if he arrested her because he thought she committed the battery, then we're into the analysis of whether there's arguable probable cause. There may not have been probable. There may not have been arguable. I don't know. But if your argument is forget all that, it's just she was being so disruptive, he had to calm her. I can't not clear where you're going. Well, if you go back and you look at our motion for summary judgment. What's your position on why he arrested her? Because she did the battery or because she was so loud he couldn't control the situation? Because Officer Whitfield initially in his report says I did it for both reasons, that she was being loud, she wouldn't be quiet despite the fact I asked her to be quiet. We couldn't find we couldn't de-escalate the situation because she was being loud. It interfered with our ability to do that. And secondarily, he was under the mistaken impression that she was the mother of the domestic violence victim. And because of all this, the family brawl, which is mentioned, I think, in Ms. Fritz's deposition elsewhere, or no, it's another deposition where it says that things calmed down when she, when Ms. Olson and two others were finally detained, everybody calmed down. And it was only at that point that the other officers were able to determine she wasn't the mother, in fact. But the whole situation prevented any investigation at that time. They couldn't investigate it because of the loud argument. But don't we need more than mere words? For a disarguable probable cause? For both, the Florida cases, the Wilkerson case in particular, says that cursing and yelling at an officer by itself doesn't constitute obstruction. But the failure to comply with an officer's request to back off, for example, can, in conjunction with those words — Which there's a dispute of fact about. I don't — I mean, she says she didn't disobey orders. She says she didn't disobey orders, but he says he asked her. He asked her. Now, she may not have perceived that as an order. But as Judge Hinkle concluded, that particular conclusory denial was really not helpful in that she didn't address any particular things that she was asked to do and specifically deny them. Just to follow up on Judge O'Scanlan's question, I'm sorry for interrupting his answer. Excuse me, I'm out of time. I understand, you know, the Florida cases define fighting words to be words like falsely shouting fire in a crowded theater, things that are going to cause, you know, massive harm. And you say what she said here fits into that?  It's anything that could incite others to act out or potentially become violent. And given the volatile nature of this argument, directing words like the B word against a fellow person living in the house could very well have been perceived by a reasonable officer as being a fighting word at that moment. I'm out of time. If you have any more questions, I will turn it over to Ms. Maddox. Ms. Maddox. Good morning. Good morning. May it please the Court, my name is Marie Maddox on behalf of the appellee. And the problem in this case is there are shifting reasons for why she could even possibly have been arrested for anything. If you go back and read Mr. Woodville's and the reason they have abandoned this issue Which issue? The issue of whether there was probable cause for an arrest for domestic violence. They've abandoned that. And the reason is, is that the witnesses have all testified, and this would even include Mr. Woodville, that Ms. Fritz, Naomi Fritz, said her mom did this. And there was never any follow-up to figure out who her mom was. No one had ever said that this was Heather Olsen. So they had to abandon that because there was no follow-up to ask who the mother was. And her mother happened to be there. Betty Fritz was actually physically present. So they abandoned that argument. And you would argue, I mean, your argument would be that just because somebody's mother had hit her, that's not arguable probable cause to arrest. When you've got more than one person, I guess, who could be a candidate for the mother, you don't just randomly get to pick one of the people. Yes, ma'am. Yes, Your Honor. But more importantly, that was the only reason. If you look at Mr. Woodville's testimony, okay, and what Mr. Woodville said, and this is on pages 285, 286 of the record, and he says when he's asked why was she arrested, and he said for suspicion of domestic violence and not and disobeying a lawful order. So when he was pushed on that, on page 286, when the question was re-asked again, he goes, let me back up. And then he recedes from his testimony and says what I was trying to do is detain her for domestic violence to interview that was his testimony. So he even receded from the statement that she was interfering with anything. But that issue is a disputed issue of material fact as to whether she was interfering with anything. And if you look at what she has even acknowledged saying, she says, and this is the only thing that she has acknowledged in her deposition saying at any time for the entirety from the time that they got there until she was in the car. And she says, when I get out, that bitch won't be in my house. When I get out. She's already in the car. She's already been arrested for the one statement that she says, this fighting word that they're arguing now. She was already in the car, already in handcuffs at the time that she made that statement. So that statement could not have motivated them to arrest her because she was already in the car when she said it. She also says that she said, get the F out. I did not invite you all in here. And he even, by his own admission, has said that he does not remember her ever saying anything for her, that Ms. Olson would ever have said, get out of the house at all. He says he doesn't remember that at all, her ever saying that. So how could that have ever motivated? You're thinking, you're saying that a reasonable inference is that he arrested her based on the belief she had committed the battery. And apparently this deposition was surprised to learn that she wasn't the right, the person, that she wasn't the mother, I gather. That she wasn't, not only was she not the mother, but that they have abandoned that. That entire argument has never been argued by them in their brief, that there was probable cause to arrest her for domestic violence. So by having abandoned that, their entire argument in this case has been that the reason that she was arrested was because she was boisterous and her failure to execute the, exit the house after being directed to do so. But that is a fictitious, hypothetical fact, because that's not what Mr. Whitfield testified to. And it's also not what she has testified to. What she has said is that she was given permission by Mr. Johnson to go into the bedroom to put a shirt on. And even Whitfield did not confirm that that was the reason that she was arrested. So what the appellant has done in this case is come up with these hypothetical facts that just don't exist to support some finding that there was arguable probable cause when those are not the facts of this case. So when they're arguing that in their first argument today before the court and in their brief was that she was boisterous, that's disputed. And he did not even, Mr. Whitfield did not even describe how she was boisterous. And her testimony is the only thing that she ever said was what I've just read to the court. But second, Mr. Whitfield never said that she was asked to leave the residence and she didn't leave. So how can they come before this court and argue that that is the fact that supports the arguable probable cause for her arrest when Mr. Whitfield never testified to that? So what they've done essentially is they have come up with these facts that potentially, okay, if there were facts to support them, that could result in arguable probable cause, but those are not the facts of this case. So the question that this Court had asked, though, first, before we even started the briefing, was whether this case was properly before the Court. And there are cases, and I would rely on the Johnson v. Jones case, the U.S. Supreme Court Johnson v. Jones, where in that case, what the U.S. Supreme Court said was if it's based solely on the facts. And I've read the Stanley v. City of Dalton case, Bates, McDaniel. And Bates and McDaniel were two cases that this Court asked that we address as to whether the Court had jurisdiction of this appeal to begin with. And notwithstanding Stanley, Bates, and McDaniel, the Johnson v. Jones case, U.S. Supreme Court still says if it's based solely on the facts, which is what Judge Hinkle found in this case, that an appeal, an interlocutory appeal on qualified immunity is improper. And my argument would be, and I would stand by our original argument, that the appeal should have been dismissed because it's based solely on the disputed facts. They're not arguing before this Court the law. The law is clearly established that you cannot arrest someone without probable cause. That's a false arrest under the Fourth Amendment. So they're not arguing the law here. They're not even arguing a mixed question of law and fact. They're arguing simply the facts, which is what Judge Hinkle properly denied qualified immunity on and said we've got to get these issues resolved. So I would respectfully request, unless there are any questions in the Court, I would respectfully request that Judge Hinkle's order be upheld. Thank you so much. Thank you. On rebuttal, I just wanted to direct the Court's attention to something in the record that was placed there by the plaintiffs, or the plaintiff, and that is Officer Whitfield's offense report dated, written shortly after the incident. And he said, this is at document 33-6, page 2. He says, all the subjects were yelling. I advised all subjects involved to step outside so that we could resolve the issue. I made contact with Heather Olson, advised her that she needed to step outside. Heather Olson continued to yell. I observed a red mark on Olson's daughter, his mistake, and I asked her what happened, and she stated her mother, Heather, pushed her, his mistake. Heather Olson refused to calm down. Heather Olson refused to follow my commands and continued to upset the other subjects at the residence. Heather Olson walked outside and started yelling. That's when he decided to arrest her. You're talking about facts again, and she's just made the argument, if the only thing at issue on appeal is facts, then we don't have jurisdiction of the case. Well, those facts are not disputed. It's not disputed that she was yelling, that Ms. Olson was yelling outside. Ms. Fritz, she only addresses what happens in the kitchen, but the incident continued to go outside. There's no dispute of fact that Officer Whitfield asked her to calm down, that she continued to yell outside, and that that yelling interfered with the ability of the officers to de-escalate the situation, prevent further violence, or the possibility of further violence, and to continue the investigation. Those are undisputed. And I submit that a reasonable officer could conclude, based on these facts, that there was probable cause, and because of this, our position is Officer Whitfield is entitled to qualified immunity. Thank you.